IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA FIORLETTA, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | Case No.: |
| v. : | |
| : | |
| NICOLE YOUNG, R.N., CORRECT CARE : | |
| SOLUTIONS, LLC, LESLEY J. : | |
| BLAIR-MORRISON in her official capacity as : | |
| Health Care Administrator of Pennsylvania State : | |
| Correctional Institution Muncy, and ROBERT : | |
| SMITH, in his official capacity as Superintendent of : | |
| Pennsylvania State Correctional Institution Muncy, : | |
| : | |
| Defendants. : | |

## COMPLAINT

AND NOW COMES FORTH Plaintiff, LISA FIORLETTA, by and through her counsel, WEINSTEIN, ZIMMERMAN & OHLIGER, and complains of Defendants as follows:

### I.  The Parties

1. Plaintiff LISA FIORLETTA is an adult individual residing at 893 Maple Avenue, Honesdale, PA 18431.

2. At all times relevant hereto, Plaintiff LISA FIORLETTA was an inmate at the Pennsylvania State Correctional Institution Muncy ("SCI Muncy").

3. Defendant NICOLE YOUNG, R.N. ("YOUNG") is an adult individual, *sui juris*, with a business address of SCI Muncy, 6454 PA-405, Muncy, Pennsylvania 17756.

4. At all times relevant hereto, Defendant YOUNG is a Registered Nurse licensed by the Pennsylvania Department of State Bureau of Professional and Occupational Affairs.

5. Defendant CORRECT CARE SOLUTIONS, LLC ("CORRECT CARE") is a Kansas limited liability company with a principal place of business at 1283 Murfreesboro Rd., Suite 500, Nashville, Tennessee 37217.

6. At all times relevant hereto, Defendant YOUNG was and is an employee, agent, and/or servant of Defendant CORRECT CARE.

7. Defendant LESLEY J. BLAIR-MORRISON ("BLAIR-MORRISON") is an adult individual, *sui juris*, with a business address of 6454 PA-405, Muncy, Pennsylvania 17756.

8. At all time relevant hereto, Defendant BLAIR-MORRISON was and is employed by the Pennsylvania Department of Corrections as a Health Care Administrator.

9. At all times relevant hereto, Defendant BLAIR-MORRISON was and is a Nursing Home Administrator licensed by the Pennsylvania Department of State Bureau of Professional and Occupational Affairs.

10. At all times relevant hereto, Defendant BLAIR-MORRISON did act in her official capacity as an employee, agent, and/or servant of the Pennsylvania Department of Corrections.

11. Defendant ROBERT SMITH ("SMITH") is an adult individual, *sui juris,* with a business address of SCI Muncy, 6454 PA-405, Muncy, Pennsylvania 17756..

12. At all times relevant hereto, Defendant SMITH was and is the Superintendent of SCI Muncy, and was and is responsible for the oversight, operation, and administration of SCI Muncy and its staff, employees, and/or agents.

13. At all times relevant hereto, Defendant SMITH did act in his official capacity as an employee, agent, and/or servant of the Pennsylvania Department of Corrections.

14. The Pennsylvania Department of Corrections is responsible for the confinement, care, and rehabilitation of state prison inmates within the Commonwealth of Pennsylvania.

15. At all times relevant hereto, pursuant to an agreement between Defendant CORRECT CARE and the Pennsylvania Department of Corrections, Defendant CORRECT CARE was the exclusive provider of medical services to inmates incarcerated at SCI Muncy, that function having been delegated to it by the Pennsylvania Department of Corrections and/or shared with it through a joint venture.

16. Defendant SMITH, as part of his responsibilities with regard to SCI Muncy, was responsible to ensure reasonable, appropriate, and legally compliant medical care and treatment of inmates within that facility.

## II. Jurisdiction and Venue

17. Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. § 1331 and § 1343.

18. This action, insofar as it states violations of Plaintiff's right against cruel and unusual punishment protected by the Eighth Amendment to the United States Constitution in Counts III, IV, V, and VI, arises under the provisions of 42 U.S.C. § 1983.

19. This Court has supplemental jurisdiction over the state claims asserted herein against Defendants CORRECT CARE SOLUTIONS, LLC and NICOLE YOUNG, R.N., pursuant to 28 U.S.C. § 1367.

## III. Factual Allegations

20. On or about January 7, 2015, Plaintiff was incarcerated at SCI Muncy following sentencing by the Pike County Court of Common Pleas.

21. Prior to Plaintiff being transferred to SCI Muncy, she suffered from a medical condition which rendered her essentially paralyzed from her torso to her feet, and necessitated her use of a wheelchair.

22. Due to Plaintiff's medical condition, special transportation arrangements were made, and her arrival at SCI Muncy was scheduled in order to ensure that staff at SCI Muncy were prepared for her arrival and could meet her medical needs.

23. Upon Plaintiff's initial arrival at SCI Muncy, she was brought to and housed in the Infirmary, where she was safe and her basic medical needs were being met.

24. For about the next fourteen (14) months, Plaintiff remained in the Infirmary where she had reasonable access to a physician, nursing staff, handicapped-accessible showers and facilities, and medical equipment.

25.   While Plaintiff remained in the infirmary, she received medical and rehabilitation treatment and was slowly beginning to regain her ability to walk.

26.   However, in or around the first week of March, 2016, Plaintiff was advised that she was being transferred to the "general population" housing block or unit.

27.   At the time of this transfer, Plaintiff was not medically fit or able to be housed in "general population" due to her medical needs.

28.   On or about March 8, 2016, Plaintiff submitted an Inmate's Request to Staff Member (Form DC-135A) requesting:

> "Please may we put in for centers for me because I have no catheter and I'm walking. They are moving me to GP – Lisa F."

29.   On or about March 9, 2016, Plaintiff received the following response:

> "Ms. Fiorletta, I am going to submit an application to the Bureau of Community Corrections to see about a Center placement for you. I will let you know the results. – Ms. Schreffler, IPA"

30.   Plaintiff was instead transferred to a "general population" unit on or about March 10, 2017.

31.   On or about March 12, 2016, Plaintiff fell in a shower located in the general population unit.

32.   The shower in the general population unit had a "hump" at the entrance which required Plaintiff to be assisted into the shower but left alone without a wheelchair, walker, or other assistive device.

33.   Plaintiff's fall was caused by her physical inability to safely stand within and move about the shower due to the design of the shower, the fact that she was unattended in the shower, and the mandate that she and other inmates shower alone without assistance from another inmate.

34.   To the contrary, the showers to which Ms. Fiorletta had become accustomed in the infirmary had no "hump", and she was able to roll a walker or wheelchair into the shower.

35.   Because she was able to freely enter the infirmary showers with an assistive device, Plaintiff was able to safely shower while in the infirmary without the need for additional assistance

or accommodation.

36. The showers in the infirmary were safe and appropriate for her medical condition; the showers in the general population unit were not.

37. On or about March 12, 2016, Plaintiff submitted an Inmate's Request to Staff Member (Form DC-135A) stating that:

> "I went to take shower on M unit, and got in shower my legs where [sic] swollen the would not give me ice all the time I've been on M. Infirmary says I have no order. Dr. Freeland and therepist [sic] said they would order. Well Sat[urday] when I went to stand to get out of shower couldn't stand knees gave out I fell officers had to help me out because Nurse Young said I was doing this on purpose to get back to Infirmary now I'm all black and blue. I want to know what is going on with my legs and how to avoid this repeating."

38. On or about March 13, 2016, Plaintiff received a response to that Request:

> "Order is in chart, nurses aware. I fixed your orange card as well."

39. On or about March 13, 2016, Plaintiff submitted an Inmate's Request to Staff Member (Form DC-135A), stating that:

> "I've been moved from the Infirmary to M-unit and due to my medical condition of being a Parapelgic [sic] medical has failed to take the proper and appropriate steps to housing me in m-unit. On 3/11/16 I went through a difficult time trying to obtain a medical mattress. The Bunk I am on is to [sic] low for me to lift myself up, it's difficult because I have little strength from being paralyzed. I am very frustrated, and disappointed. This is a matter in which medical needs to be address [sic], I have taken all the needed steps to solve this issue and to no avail. The medical department has neglected to take into consideration my situation and has fail [sic] to help fix this matter. I am requesting your assistence [sic] in the matter."

40. On or about March 21, 2016, Plaintiff received a response to that Request:

> "They have ordered a medical mattress for you. I was informed that why [sic] you are waiting you have been authorized to have (2) regular mattresses to sleep on. What other issues need to be addressed."

41. On or about March 15, 2016, Plaintiff filed an Official Inmate Grievance (Form DC-804), stating that:

> "On 3/10/16 I was removed from the infirmary (which I've been housed at since my arrival at SCI Muncy on 1/7/15. I was paralyzed over the course of time I've made some progress. However, I am not at the full capacity of my physical being to take care of myself safely without certain adjustments. I am in a cell on the first floor. I was told I'd need a high rised mattress and have yet to receive it. The reason for a high rised mattress is because my legs are not strong enough for me to lift myself up at a certain height. I've brought this issue to medical and they have

neglected to assist me. I fell in the shower on 3/12/16, medical was called but did not respond, two officers assisted along with a Sergeant and my unit officer, Medical has neglected my needs and condition and has not done anything.

42. On March 20, 2016, Plaintiff submitted an Inmate's Request to Staff Member (Form DC-135A), directed to "Ms. B. Morrison" stating that:

> "I woke up today for Count and my feet and legs were extremely swollen so swollen that I was unable to bend or stand. The swelling reached all the way to my thigh on my left leg and to my knee on my right leg. I informed my officer Mr. Hunter who called medical at approximately 6:30 am and was told by nurse Kessler that as soon as the P.A. arrives they would be told to come over and check me out. At 9:40 am I awoke from a nap and asked again for medical – still no response to my medical issue. It is now 12:30 pm and medical still has not come to see me. I'm in excruciating pain. I'm unable to walk to use the bathroom. I'm soaking up my pads and my roommate is taking care of me. This is beyond neglectful and everyone I have reached out to has done nothing. I am upset, and very, very in disbelief. I cannot believe your nurses are allowed to just neglect a medical call because they "want to" or "do not" want to attend. I have exercised all my possible options within this facility and still to no avail. I will be contacting my attorney to handle this matter. Thank you."

43. On March 20, 2016, Plaintiff submitted an Inmate's Request to Staff Member (Form DC-135A), directed to "Mr. Frantz" stating that:

> "I woke up today for count and my legs were extremely swollen. So swollen that I was unable to bend or stand on my feet. The swelling reach [sic] all the way to my thigh on my left leg and up to my knee on my right leg. I informed my officer Mr. Hunter who called medical at approximately 6:30 am and was told by nurse Kessler that as soon as the P.A. arrives they would be told to come over and check me out. At 9:40 am I awoke from a nap and asked again for medical – still no response to my medical issue. It is now 12:30 pm and medical still has not come to see me. I'm in excruciating pain. I'm unable to walk to use the bathroom – I'm soaking my pads and my roommate is taking care of me. This is beyond neglectful and every official I have reached out to has done nothing!"

44. On March 20, 2016, Plaintiff filed an Official Inmate Grievance (Form DC-804), stating that:

> "On 3/20/16 I awoke with extreme swelling in both of my legs and feet. I asked my officer "Hunter" to call medical. Medical was called and was told. Medical nurse Kessler said once a P.A. arrives they would be over. That was at approximately 6:30 am. At 9:42 am I asked for medical again – Medical still did not respond. My legs and feet are so swollen I am unable to bend, stand, or move my feet and legs. I've been in bed all day unable to get up and use the bathroom on my own due to my legs. Medical has been unprofessional and neglectful. I took all actions needed before I placed this grievance. Same results. No response from medical."

45. On April 4, 2016, Defendant BLAIR-MORRISON issued a denial of the March 20, 2016 Grievance, stating that:

> "...I have reviewed your medical chart. There is no documentation in your chart for a request for medical to see you on March 20, 2016. There is no documented sick call until March 23, 2016 and this was related to an upper respiratory infection. You did see the MD on 3/29/16 for chronic care clinic. Ms. Fiorletta this Grievance is lacking arguable facts and is therefore denied."

46. Despite her multiple and repeated pleas for assistance, Plaintiff was not provided medical treatment and was not transferred back to the Infirmary.

47. However, despite the fact that her grievance was ultimately denied for a purported lack of arguable facts, Plaintiff was moved from the "general population" unit to a "semi-handicapped" unit.

48. This transfer still did not provide Plaintiff with appropriate facilities given her medical condition.

49. On March 31, 2017, Plaintiff again fell in the shower and injured her left leg.

50. Following her second fall, an x-ray was finally performed on April 1, 2016.

51. The x-ray revealed fractures to her leg that were apparently related to both falls.

52. As a result, Plaintiff was forced to endure nearly an entire month with an untreated ankle fracture due to Defendants' election to transfer Plaintiff to a medically inappropriate setting, and to ignore her repeated pleas for appropriate medical treatment.

53. Upon further delays in treatment, Plaintiff was finally admitted to Geisinger Medical Center in Danville, Pennsylvania on April 6, 2016.

54. Plaintiff's condition required a major fixation surgery of her left leg.

55. Plaintiff subsequently developed an infection following the surgery, which was necessitated by the injuries caused by Defendants' medical neglect and willful, wanton, and deliberate indifference toward Plaintiff's medical condition and needs.

## COUNT I

<u>LISA FIORLETTA v. NICOLE YOUNG, RN</u>

56. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

57. At all times relevant hereto, Defendant YOUNG was and/or represented herself to be a practicing Registered Nurse, duly licensed to practice nursing by and in the Commonwealth of Pennsylvania.

58. At all times relevant hereto, Plaintiff was a patient under the medical care and treatment of Defendant YOUNG.

59. At all times relevant hereto, Defendant YOUNG held herself out to the public and to Plaintiff as possessing the proper degree of learning and skill necessary to render nursing services in accordance with good and accepted standards of nursing practice, and that she undertook to use reasonable care and diligence in her treatment.

60. At all times relevant hereto, Defendant YOUNG, undertook and agreed to render nursing care to Plaintiff herself and through her practice of CORRECT CARE SOLUTIONS, LLC.

61. Defendant YOUNG was professionally negligent and unskillful, reckless, deliberately indifferent, willful, and wanton in rendering treatment and services to Plaintiff, in departing from good and accepted standards of nursing practice in connection with the nursing care rendered to Plaintiff; in that she failed and neglected to exercise that degree of care, caution, prudence, skill, ability, professional knowledge, and training generally possessed and utilized by registered nurses as follows:

  a. Incorrectly determining that it was medically appropriate to release Plaintiff from the Infirmary to a "general population" unit;

  b. Failing to ensure, in approving of Plaintiff's release to the "general population" unit, that her medical needs would be met;

  c. Failing to oppose or dispute the decision to release Plaintiff to the "general population" unit, on the grounds that her medical needs would not be met;

  d. Failing to provide aid or treatment to Plaintiff upon learning of her first fall in the shower;

  e. Failing to approve or recommend Plaintiff's transfer back to the Infirmary after learning of her first fall;

  f. Failing to ensure that Plaintiff received proper medical treatment, including consultation with a physician and/or orthopaedic surgeon following her first fall;

  g. Failing to ensure that Plaintiff received proper diagnostic imaging and testing to properly evaluate and diagnose her injuries after her first fall;

  h. Failing to promptly and properly refer Plaintiff's medical care to outside facilities as necessary; and

  i. Being otherwise negligent, reckless, deliberately indifferent, willful, and wanton in her failure to meet the basic medical needs and proper care of Plaintiff.

62. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, Plaintiff suffered resulting injuries, pain, mental and emotional anguish, and disability, and will continue to suffer same into the future.

63. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, and the resulting physical injuries, Plaintiff has been severely disabled, and her mobility and progress in recovery for other conditions hindered and impaired.

64. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, Plaintiff has sustained an injury resulting in permanent disfigurement and visible scarring.

65. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, Plaintiff has incurred and will incur in the future various medical and other treatment-related expenses; which expenses have been paid by her or on her behalf by an entity lawfully entitled to subrogation and/or reimbursement, or remain outstanding.

66. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, Plaintiff has suffered embarrassment and humiliation as a result of her ongoing disability.

67. As a result of Defendant YOUNG's negligence, recklessness, and deliberate indifference, Plaintiff has been rendered unable to function normally in her daily life and activities, and has suffered and will continue to suffer loss of enjoyment of life as a result.

## COUNT II

## LISA FIORLETTA v. CORRECT CARE SOLUTIONS LLC

68. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

69. At all times relevant hereto, Defendant CORRECT CARE operated under a contract or other agreement with the Pennsylvania Department of Corrections to provide health care services to inmates of SCI Muncy.

70. At all times relevant hereto, Defendant YOUNG was an employee, agent or servant of Defendant CORRECT CARE, and did undertake the care and treatment of Plaintiff as more fully set forth below, and did at all times relevant hereto act within the scope of her employment and agency of Defendant CORRECT CARE.

71. Further, at all times relevant hereto, Defendant CORRECT CARE did direct the care of inmates of SCI Muncy.

72. At all times relevant hereto, Defendant CORRECT CARE, itself as well as by and through its agents, servants, and/or employees, undertook and agreed to render medical care to Plaintiff.

73. At all times relevant hereto, Defendant CORRECT CARE, itself and by and through its agents, servants, and/or employees, held itself out to the public and to Plaintiff as utilizing and employing medical personnel possessing the proper degree of learning and still necessary to render medical services in accordance with good and accepted standards of medical and nursing practice.

74. At all times relevant hereto, Defendant YOUNG was an employee, servant, and/or agent of Defendant CORRECT CARE.

75. At all times relevant hereto, Defendant YOUNG acted in the course and scope of her duties and employment, servitude, and/or agency of Defendant CORRECT CARE in rendering nursing care to Plaintiff as aforesaid.

76. Defendant CORRECT CARE, itself as well as by and through its agents, was negligent, reckless, unskillful, deliberately indifferent, willful, and wanton in their treatment of Plaintiff, in departing from good and accepted standards of medical and nursing practice in connection with the care rendered to Plaintiff, in that it and its agents, servants, and/or employees failed and neglected to exercise that degree of care, caution, prudence, skill, ability, professional knowledge, and training generally possessed and utilized by physicians, nurses, and other health care providers as follows:

   a. Incorrectly determining that it was medically appropriate to release Plaintiff from the Infirmary to a "general population" unit;

   b. Failing to ensure, in approving of Plaintiff's release to the "general population" unit, that her medical needs would be met;

   c. Failing to oppose or dispute the decision to release Plaintiff to the "general population" unit, on the grounds that her medical needs would not be met;

   d. Failing to provide aid or treatment to Plaintiff upon learning of her first fall in the shower;

   e. Failing to approve or recommend Plaintiff's transfer back to the Infirmary after learning of her first fall;

   f. Failing to ensure that Plaintiff received proper medical treatment, including consultation with a physician and/or orthopaedic surgeon following her first fall;

   g. Failing to conduct proper diagnostic testing to evaluate and diagnose Plaintiff's injuries from her first fall;

h. Failing to promptly and properly refer Plaintiff's medical care to outside facilities as necessary;

i. Being otherwise negligent, reckless, deliberately indifferent, willful, and wanton in her failure to meet the basic and essential medical needs and proper care of Plaintiff;

j. Failing to enact guidelines, safeguards, rules, and protocols to ensure that an injured inmate's basic and essential medical needs were met;

k. Failing to employ professional staff who are knowledgeable and experienced in identifying and meeting the basic and essential medical needs of inmates;

l. Failing to properly supervise its professional staff to ensure that inmates' medical needs were met and that they were not denied basic and essential medical care;

m. Failing to properly train and instruct its professional staff to ensure that inmates were not being denied basic and essential medical care; and

n. Failing to provide proper nursing and medical staff, in sufficient numbers, to ensure that the medical facilities at SCI Muncy were not understaffed and that inmates were not being denied basic and essential medical care.

77. As a direct result of the negligence, recklessness, deliberate indifference, willfulness, and wantonness of Defendant CORRECT CARE and its agents, servants, and/or employees, Plaintiff suffered the injuries and resulting damages set forth above.

## COUNT III

### LISA FIORLETTA v. NICOLE YOUNG, R.N.

78. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

79. At all times relevant hereto, Defendant YOUNG knew that Plaintiff was in need of continuous medical monitoring and care while incarcerated.

80. At all times relevant hereto, Defendant YOUNG knew that Plaintiff was not medically fit to be housed in a "general population" unit.

81. Despite Defendant YOUNG's knowledge as aforesaid, Defendant YOUNG deprived Plaintiff of appropriate medical treatment.

82. Despite Defendant YOUNG's knowledge as aforesaid, Defendant YOUNG arranged, consented to, or failed to object to Plaintiff's transfer to a "general population" unit.

83. Despite Defendant YOUNG's knowledge as aforesaid, Defendant YOUNG failed to allow or recommend Plaintiff's return to housing in the Infirmary when she learned of Plaintiff's first fall in the shower due to her medical condition.

84. Despite Defendant YOUNG's knowledge as aforesaid, Defendant YOUNG failed to provide treatment or otherwise attend to Plaintiff's medical needs following Plaintiff's first fall in the shower due to her medical condition.

85. Despite Defendant YOUNG's knowledge as aforesaid, Defendant YOUNG exposed Plaintiff to the risk of future injury from a second fall, which did occur, by failing to respond to Plaintiff's medical needs.

86. The aforesaid conduct of Defendant YOUNG, separately and in the aggregate as a course of conduct, did exhibit reckless disregard, and willful, wanton, and deliberate indifference to Plaintiff's basic and essential medical needs.

87. The aforesaid conduct of Defendant YOUNG caused serious personal injury to Plaintiff, and the unnecessary and wanton infliction of pain.

88. Defendant YOUNG, in the aforesaid conduct, acted under color of state law.

89. Defendant YOUNG, in the aforesaid conduct, violated Plaintiff's rights against cruel and unusual punishment as protected by the Eighth Amendment to the United States Constitution.

90. Plaintiff brings this claim against Defendant YOUNG pursuant to 42 U.S.C. Section 1983.

## COUNT IV

### LISA FIORLETTA v. CORRECT CARE SOLUTIONS, LLC

91. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

92. At all times relevant hereto, Defendant CORRECT CARE knew that Plaintiff was in need of continuous medical monitoring and care while incarcerated.

93. At all times relevant hereto, Defendant CORRECT CARE knew that Plaintiff was not medically fit to be housed in a "general population" unit.

94. Despite Defendant CORRECT CARE's knowledge as aforesaid, Defendant CORRECT CARE deprived Plaintiff of appropriate medical treatment.

95. Despite Defendant CORRECT CARE's knowledge as aforesaid, Defendant CORRECT CARE arranged, consented to, or failed to object to Plaintiff's transfer to a "general population" unit.

96. Despite Defendant CORRECT CARE's knowledge as aforesaid, Defendant CORRECT CARE failed to allow or recommend Plaintiff's return to housing in the Infirmary when she learned of Plaintiff's first fall in the shower due to her medical condition.

97. Despite Defendant CORRECT CARE's knowledge as aforesaid, Defendant CORRECT CARE failed to provide treatment or otherwise attend to Plaintiff's medical needs following Plaintiff's first fall in the shower due to her medical condition.

98. Despite Defendant CORRECT CARE's knowledge as aforesaid, Defendant CORRECT CARE exposed Plaintiff to the risk of future injury from a second fall, which did occur, by failing to respond to Plaintiff's medical needs.

99. The aforesaid conduct of Defendant CORRECT CARE, separately and in the aggregate as a course of conduct, did exhibit reckless disregard, and willful, wanton, and deliberate indifference to Plaintiff's basic and essential medical needs.

100. The aforesaid conduct of Defendant CORRECT CARE caused serious personal injury to Plaintiff, and the unnecessary and wanton infliction of pain.

101. Defendant CORRECT CARE has encouraged, tolerated, ratified, and has been deliberately indifferent to certain patterns, practices, and customs, as well as to the need for more or different training, supervision, investigation, or discipline in the provision of medical and nursing treatment to inmates of correctional facilities including SCI Muncy.

102. Defendant CORRECT CARE's encouragement, toleration, ratification, and deliberate indifference to the aforesaid patterns and conditions caused Plaintiff to suffer serious personal injury, and the unnecessary and wanton infliction of pain.

103. Defendant CORRECT CARE, in the aforesaid conduct, acted under color of state law.

104. Defendant CORRECT CARE, in the aforesaid conduct, violated Plaintiff's rights against cruel and unusual punishment as protected by the Eighth Amendment to the United States Constitution.

105. Plaintiff brings this claim against Defendant CORRECT CARE pursuant to 42 U.S.C. Section 1983.

## COUNT V

### LISA FIORLETTA v. LESLEY J. BLAIR-MORRISON in her official capacity as Health Care Administrator of Pennsylvania State Correctional Institution Muncy

106. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

107. At all times relevant hereto, Defendant BLAIR-MORRISON knew that Plaintiff was in need of continuous medical monitoring and care while incarcerated.

108. At all times relevant hereto, Defendant BLAIR-MORRISON knew that Plaintiff was not medically fit to be housed in a "general population" unit.

109. Despite Defendant BLAIR-MORRISON's knowledge as aforesaid, Defendant BLAIR-MORRISON deprived Plaintiff of appropriate medical treatment.

110. Despite Defendant BLAIR-MORRISON's knowledge as aforesaid, Defendant BLAIR-MORRISON arranged, consented to, or failed to object to Plaintiff's transfer to a "general

population" unit.

111. Despite Defendant BLAIR-MORRISON's knowledge as aforesaid, Defendant BLAIR-MORRISON failed to allow or recommend Plaintiff's return to housing in the Infirmary when she learned of Plaintiff's first fall in the shower due to her medical condition.

112. Despite Defendant BLAIR-MORRISON's knowledge as aforesaid, Defendant BLAIR-MORRISON failed to provide treatment or otherwise attend to Plaintiff's medical needs following Plaintiff's first fall in the shower due to her medical condition.

113. Despite Defendant BLAIR-MORRISON's knowledge as aforesaid, Defendant BLAIR-MORRISON exposed Plaintiff to the risk of future injury from a second fall, which did occur, by failing to respond to Plaintiff's medical needs.

114. The aforesaid conduct of Defendant BLAIR-MORRISON, separately and in the aggregate as a course of conduct, did exhibit reckless disregard, and willful, wanton, and deliberate indifference to Plaintiff's basic and essential medical needs.

115. The aforesaid conduct of Defendant BLAIR-MORRISON caused serious personal injury to Plaintiff, and the unnecessary and wanton infliction of pain.

116. Defendant BLAIR-MORRISON has encouraged, tolerated, ratified, and has been deliberately indifferent to certain patterns, practices, and customs, as well as to the need for more or different training, supervision, investigation, or discipline in the provision of medical and nursing treatment to inmates of correctional facilities including SCI Muncy.

117. Defendant BLAIR-MORRISON's encouragement, toleration, ratification, and deliberate indifference to the aforesaid patterns and conditions caused Plaintiff to suffer serious personal injury, and the unnecessary and wanton infliction of pain.

118. Defendant BLAIR-MORRISON, in the aforesaid conduct, acted under color of state law.

119. Defendant BLAIR-MORRISON, in the aforesaid conduct, violated Plaintiff's rights against cruel and unusual punishment as protected by the Eighth Amendment to the United States Constitution.

120. Plaintiff brings this claim against Defendant BLAIR-MORRISON pursuant to 42 U.S.C. Section 1983.

## COUNT VI

<u>LISA FIORLETTA v. ROBERT SMITH, in his official capacity as
Superintendent of Pennsylvania State Correctional Institution Muncy</u>

121. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint by reference, as if more fully set forth herein.

122. At all times relevant hereto, Defendant SMITH knew that Plaintiff was in need of continuous medical monitoring and care while incarcerated.

123. At all times relevant hereto, Defendant SMITH knew that Plaintiff was not medically fit to be housed in a "general population" unit.

124. Despite Defendant SMITH's knowledge as aforesaid, Defendant SMITH deprived Plaintiff of appropriate medical treatment.

125. Despite Defendant SMITH's knowledge as aforesaid, Defendant SMITH arranged, consented to, or failed to object to Plaintiff's transfer to a "general population" unit.

126. Despite Defendant SMITH's knowledge as aforesaid, Defendant SMITH failed to allow or recommend Plaintiff's return to housing in the Infirmary when she learned of Plaintiff's first fall in the shower due to her medical condition.

127. Despite Defendant SMITH's knowledge as aforesaid, Defendant SMITH failed to provide treatment or otherwise attend to Plaintiff's medical needs following Plaintiff's first fall in the shower due to her medical condition.

128. Despite Defendant SMITH's knowledge as aforesaid, Defendant SMITH exposed Plaintiff to the risk of future injury from a second fall, which did occur, by failing to respond to Plaintiff's medical needs.

129. The aforesaid conduct of Defendant SMITH, separately and in the aggregate as a course of conduct, did exhibit reckless disregard, and willful, wanton, and deliberate indifference to

Plaintiff's basic and essential medical needs.

130. The aforesaid conduct of Defendant SMITH caused serious personal injury to Plaintiff, and the unnecessary and wanton infliction of pain.

131. Defendant SMITH has encouraged, tolerated, ratified, and has been deliberately indifferent to certain patterns, practices, and customs, as well as to the need for more or different training, supervision, investigation, or discipline in the provision of medical and nursing treatment to inmates of correctional facilities including SCI Muncy.

132. Defendant SMITH's encouragement, toleration, ratification, and deliberate indifference to the aforesaid patterns and conditions caused Plaintiff to suffer serious personal injury, and the unnecessary and wanton infliction of pain.

133. Defendant SMITH, in the aforesaid conduct, acted under color of state law.

134. Defendant SMITH, in the aforesaid conduct, violated Plaintiff's rights against cruel and unusual punishment as protected by the Eighth Amendment to the United States Constitution.

135. Plaintiff brings this claim against Defendant SMITH pursuant to 42 U.S.C. Section 1983.

## IV.  Claim for Relief

WHEREFORE, Plaintiff respectfully requests Judgment against Defendants for the following relief:

   a)   compensatory and consequential damages;

   b)   punitive and exemplary damages;

   c)   attorney fees and costs;

   d)   such other relief deemed just and proper by the Court.

Respectfully Submitted,

WEINSTEIN, ZIMMERMAN & OHLIGER

    /s/
Jason R. Ohliger, Esquire
The Kenworthey Building
410 Broad Street
Milford, Pennsylvania 18337
(570) 296-7300
(570) 296-8600 (fax)
ohliger@wzlawfirm.com
Attorney for Plaintiff